**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TIMOTHY MILLER,<br><br>Plaintiff,<br><br>v.<br><br>SUPERINTENDNET THOMAS MCGINLEY, *et al.*,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil No. 1:20-CV-02270<br><br><br><br><br><br><br><br><br>Judge Jennifer P. Wilson |

**MEMORANDUM**

Before the court is Defendant's motion for summary judgment. (Doc. 16.) Defendants' motion for summary judgment will be granted in part and denied in part. As explained, Defendants failed to meet their burden in establishing that Plaintiff did not exhaust his administrative remedies. However, summary judgment will be granted on the Fourteenth Amendment claim against all Defendants, the Eighth Amendment claim against Defendants McGinley, Fould, and Fowler, and the Eighth Amendment claim against Defendant Walter in her official capacity. The Eighth Amendment claim against Defendant Walter in her individual capacity will survive summary judgment.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, an inmate currently housed at the State Correctional Institution Phoenix ("SCI-Phoenix") in Collegeville, PA, initiated this action in December of 2020 by filing a complaint raising Eighth and Fourteenth Amendment claims

against four defendants following two inmate attacks on Plaintiff at SCI-Coal Township. (Doc. 1.) Specifically, the complaint names the following four defendants: (1) Thomas S. McGinley ("McGinley"), Superintendent at SCI-Coal Township; (2) Major R. Fould ("Fould"), Major at SCI-Coal Township; (3) Paul Fowler ("Fowler"), Unit Manager at SCI-Coal Township; and (4) T. Walter ("Walter"), Hearing Examiner and Correctional Officer at SCI-Coal Township. (Doc. 1, p. 4.)

The allegations in the complaint are difficult to ascertain. (Doc. 1.) As best as the court can determine, Plaintiff alleges that he was stabbed three times by two inmates on May 2, 2019. (*Id.*, p. 3.) He further alleges that Defendant Walter told the two inmates that he had identified them as the assailants. (*Id.*) Then on May 23, 2019, Plaintiff alleges that he was stabbed three more times by an associate of those two inmates. (*Id.*) This second attack resulted in Plaintiff being taken to the emergency room at a hospital outside the facility. (*Id.*, p. 6.) He alleges that Defendant Walter's statement to the two inmates was the catalyst for the second attack. (*Id.*, p. 3.) He further alleges that he was placed in the restricted housing unit ("RHU") following each attack. (*Id.*) He alleges that the security officials had been instructed to house him on the west side of the facility, yet he was purposely placed on the east side of the facility, placing him at additional risk, and the second stabbing occurred while he was housed on the east side. (*Id.*, p. 5.)

Plaintiff alleges that Defendant Fould directed Defendant Walter to dismiss the second misconduct because the two inmates admitted they had stabbed Plaintiff, "which then activated the misnomer that plaintiff was a snitch." (*Id*.) Plaintiff alleges that Defendant Fowler's misconduct report D352442 was "fu[l] of deceits and untruths." (*Id*.) Plaintiff alleges that he sought relief for the alleged deliberate indifference resulting in his injuries without success. ( *Id*.) He states that Defendant McGinley "could/should have conducted a full independent investigation upon the duell (sic) assaults upon plaintiff." (*Id*.) He states that Defendant McGinley and Founds disregarded the pervasive risk of harm to Plaintiff by failing to act. (*Id*.)

Defendants answered the complaint on April 5, 2021. (Doc. 16.) Defendants moved for summary judgment on May 30, 2022 and filed a brief in support of their motion on June 23, 2022. (Docs. 43, 48.) Plaintiff filed his brief in opposition on August 10, 2022. (Doc. 52.) Defendants did not file a reply. The motion is now ripe to be addressed by the court.

**JURISDICTION AND VENUE**

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue is proper in this district because the alleged acts and omissions giving rise to the

claims occurred at SCI-Coal Township, located in Northumberland County, Pennsylvania, which is located within this district. *See* 28 U.S.C. § 118(b).

**MOTION FOR SUMMARY JUDGMENT STANDARD**

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the

court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Defendants' Motion Will Be Denied as to the Failure to Exhaust Administrative Remedies.

Defendants seek summary judgment on the theory that Plaintiff failed to exhaust his administrative remedies. (Doc. 49, pp. 5–7.) Plaintiff responds by asserting that he has exhausted his administrative remedies. (Doc. 52, p. 16.) The court summarizes the facts regarding administrative exhaustion below and finds that there are no disputed facts regarding the administrative forms filed. However, the court finds that there is a factual dispute about what occurred in the course of the hearing and which Department of Corrections ("DOC") policy applies to Plaintiff's attempts at administrative resolution.

#### 1. DC-ADM 801 and DC-ADM 802

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*, requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation omitted) (quoting *Woodford*, 548 U.S. at 88)). "[C]ompliance with the administrative remedy scheme" means "substantial" compliance with the prison's grievance procedures. *See Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004) (citing *Nyhuis v. Reno*, 204 F.3d 65, 77–78) (3d Cir. 2000). Failure to exhaust available administrative remedies is an affirmative defense. *Ray v. Kertes*, 285 F.3d 287, 292 (3d Cir. 2002).

The DOC has three different administrative remedy processes which collectively provide an inmate a route to challenge almost every aspect of confinement. *See Fortune v. Bitner*, 2006 WL 2796158, at *7 (M.D. Pa. Sep. 25, 2006), aff'd, 285 F. App'x 947 (3d Cir. 2008). Those policies are: (1) the Inmate Grievance Policy, DC-ADM 804; (2) the Inmate Discipline Policy, DC-ADM 801; and (3) the Administrative Custody policy, DC-ADM 802. *See* Pa. Dep't Of Corr., Policies, https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx (last visited March 13, 2023). The three programs address specific issues which may arise within the prison, and one administrative remedy may not be substituted for the other. *Fortune*, 2006 WL 2796158, at *7. Relevant to this case are DC-ADM 804 and DC-ADM 801. Defendants attached the relevant policies that were in

effect at the time of Plaintiff's alleged incidents, and Plaintiff did not object to the assertion that these are the operative policies. (Doc. 52.) Therefore, the court will rely on these policy statements.

DC-ADM 804 describes the administrative remedies for inmate grievances. DC-ADM 804 defines a "grievance" as "[a] formal written complaint by an inmate related to a problem encountered during the course of his/her confinement." (Doc. 48-2, p. 35.) DC-ADM 804 provides three levels of adjudication—an initial decision followed by two levels of review. (*Id.*, pp. 16–24.) Grievances are initiated by an inmate filing an inmate-grievance form, which must be filed with the Facility Grievance Coordinator within 15 days of the incident giving rise to the grievance. (*Id.*, p. 6.) The grievance should identify the persons involved in the incident and "include a statement of the facts relevant to the claim." (*Id.*) If the Facility Grievance Coordinator's decision on the grievance is unsatisfactory, the inmate can appeal that decision to two subsequent tiers of review; the Facility Manager and ultimately the Chief of the DOC Secretary's Office of Inmate Grievances and Appeals. (*Id.*, pp. 16–24.)

DC-ADM 804 lists three exceptions—issues that are not grievable under its provisions. (Doc. 48-2, p. 6.) Relevant to this case, review of issues relating to DOC policy DC-ADM 801, i.e. inmate discipline, are not covered under DC-ADM 804:

> Issues concerning a specific inmate misconduct charge, ***conduct of hearing, statements written within a misconduct and/or other report,*** a specific disciplinary sanction, and/or the reasons for placement in administrative custody will not be addressed through the Inmate Grievance System and must be addressed through Department policy **DC-ADM 801, "Inmate Discipline"** and/or **DC-ADM 802, "Administrative Custody Procedures."** ***Issues other than specified above must be addressed through the Inmate Grievance System.***

(*Id*.) (emphasis in original). Significantly, DC-ADM 804 explicitly states that issues relating to inmate discipline are not grievable under DC-ADM 804.

DC-ADM 801 covers inmate discipline. (Doc. 48-1, pp. 22–63.) Whereas a grievance is initiated by an inmate, inmate discipline is initiated by a member of the prison staff filing a written misconduct report. (*Id.*, p. 25.) While less serious offenses are subject to informal resolution, more-serious offenses are resolved through formal channels. (*Id.*, p. 31.) The formal approach involves a misconduct hearing before a Hearing Examiner who determines whether the inmate is guilty of the alleged violation. (*Id.*, p. 37.)

DC-ADM 801 provides three levels of possible review. (*See Id.* 20-22.) After a finding of guilty, the inmate has 15 days to submit a written appeal to the Program Review Committee ("PRC"). (*Id.*, p. 42, 47.) There are only three valid bases for an appeal: (1) that the procedures employed were contrary to law or DOC directives or regulations; (2) that the punishment is disproportionate to the offense; or (3) that the findings of fact were insufficient to support the decision. (*Id.* p. 47.) Inmates are not allowed to appeal findings of not guilty, and if they pleaded guilty

then they may appeal only on the first two grounds. (*Id.*) After the PRC issues its decision, the inmate then has seven days to appeal to the Facility Manager. (*Id.*, p. 49.) Once again, the appeal is limited to the three bases identified above. (*Id.*) Once the Facility Manager makes his or her decision, the inmate then has seven days to appeal to the DOC Chief Hearing Examiners Office, Office of Chief Counsel, which provides the final level of review. (*Id.*, p. 50.)

**a. Facts**

Both parties have attached the documents regarding Grievance 806727. On May 30, 2019, Plaintiff filed Grievance 806727 alleging that Defendant Walter told the two inmates who initially stabbed him that he had identified them as the assailants. (Doc. 48-1, p. 17; Doc. 52, p. 43.) This was filed on a DC-804 form and alleges this was the cause of the second attack. (*Id.*) On June 14, 2019, the grievance was denied and the facility grievance coordinator states that "[t]he Hearing Examiner is not an SCI Coal Township employee. Please contact Mr. Moslak at Central Office for any concerns with the Hearing Examiner." (Doc. 48-1, p. 16; Doc. 52, p. 43.) The rationale for the denial was listed as DC-ADM 801 Inmate Discipline/Misconduct Procedures. (*Id.*) On June 18, 2019, Plaintiff filed a DC-804 form as a second level of appeal to Defendant McGinley asserting that the grievance should not be rejected because it deals with "security issues." (Doc.

48-1, p. 14; Doc. 52, p. 45.) On June 21, 2019, the Facility Manager's Appeal Response was signed by Defendant McGinley and stated the following:

> I have reviewed your appeal and concur with CSA Kelly's rationale for rejection, as it relates to your assertions and the DC-ADM 801. Per policy and specific to Section 1, Subsection A#7, issues concerning a specific inmate misconduct charge, conduct of hearing, statements written within a misconduct and/or other report, a specific disciplinary sanction, and/or other reasons for placement in administrative custody will not be addressed through the Inmate Grievance System and must be addressed through Department policy DM-ADM 801, "Inmate Discipline" and/or DC-ADM 802.

(Doc. 48-1, p. 13; Doc. 52, p. 46.)

In response, Plaintiff filed a DC-804 form appealing the grievance to the Central Office, making clear that he was not raising any due process claims regarding the misconduct hearing, but simply filing a grievance regarding Defendant Walter's statements to other inmates:

> I am being told I can not filed a grievance on HEX because T. Walter is not a Coaltownship employee. Hex T. Walter is an employee of the D.O.C. her actions has caused me to get stabbed and almost killed. She told other inmates I told her I was stabbed 3 times. This Got me labeled a RAT and Snitch with in the prison. Her actions caused a security risk within the prison. Her actions is not about what was done in my hearing so I'm not filing a grievance about my hearing. I'm filing a grievance because her actions not at my hearing, but her statement to other inmates concerning me put my life on the line. My hearing was over with when she made her statements and labeled me a RAT. So this isn't about my misconduct. I have a right to be protected from any harm. She placed a target on my back.

(Doc. 48-1, p. 12.)

On July 18, 2019, the Final Appeal Decision Dismissal was entered upholding the dismissal stating that "Grievances related to Inmate Discipline/Misconduct Procedures shall be handled according to Policy DC-ADM 801 and shall not be reviewed by the Facility Grievance Coordinator." (Doc. 48-1, p. 11; Doc. 52, p. 48.)

Therefore, there is no dispute that Plaintiff followed the grievance process set forth in DC-ADM 804, and Defendants have dismissed his grievances at each stage requiring him to seek redress for Defendant Walter's alleged disclosure through DC-ADM 801. What is unknown is whether or not Defendant Walter's alleged disclosure to the two inmates who stabbed Plaintiff occurred during Plaintiff's misconduct hearing or outside of the misconduct hearing. Plaintiff's misconduct appeal to the Central Office indicates that the statements were not made during the misconduct hearing. (Doc. 48-1, p. 12.) Plaintiff's brief in opposition includes a statement that during the hearing, Defendant Walter "was viewing the video footage and the power went off and the hearing screen went Black. Plaintiff never entered a plea and was removed from the hearing room for over a[n] hour. [O]nce returned by R.H.U Officers Defendant Walter only said. '30 days and 30 days R.H.U confinement for # 16 & #35 and loss of job.[']" (Doc. 52, p. 8.) Therefore, it is unclear whether or not Defendant Walter spoke with the other two inmates in the course of Plaintiff's misconduct hearing. This is a

material fact, because if her alleged statements were made during the course of the misconduct hearing, Defendant's argument that Plaintiff was required to use the appeals process set forth in DC-ADM 801 would have merit. But if Defendant Walter's alleged disclosure occurred outside the misconduct hearing, then DC-ADM 801 fails to provide any relief for Plaintiff. Therefore, Defendants have failed to meet their burden and summary judgment on the theory of Plaintiff's failure to exhaust his administrative remedies will be denied.

**B. Defendants' Motion Will Be Granted as to the Fourteenth Amendment Claim.**

Plaintiff included a Fourteenth Amendment deliberate indifference claim in his complaint. (Doc. 1.) However, deliberate indifference is covered by the Eighth Amendment, not the Fourteenth. The court will address the Eighth Amendment claim below.

However, attached to the complaint were multiple documents regarding the misconduct Plaintiff incurred for "fighting" during the stabbings. (*Id.*) Additionally, the text of the complaint alleges staff inaccuracies in the misconduct documents, failures to properly investigate, and frustration that he was placed in the RHU following each stabbing. (*Id.*) Reading the complaint very liberally, the court construes the Fourteenth Amendment claim to be a due process claim regarding the misconduct raised against him.

However, "inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. Pennsylvania Dept. of Corrections*, 642 F.3d 163, 171 (3d Cir. 2011). Therefore, the court will grant Defendants summary judgment on the perceived Fourteenth Amendment claim.

**C. Defendant's Motion Will Be Granted as to the Eighth Amendment Claim Against Defendants McGinley, Fould, and Fowler.**

While Defendants' motion for summary judgment cannot succeed on the theory of Plaintiff failing to exhaust his administrative remedies for the reasons explained, it will succeed on the theory that Plaintiff failed to plead any personal involvement on the part of Defendants McGinley, Fould, and Fowler in the Eighth Amendment deliberate indifference claim.

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is also well established that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).

Here, the complaint focuses on the alleged actions of Defendant Walter. (Doc. 1.) As to the other Defendants, Plaintiff alleges that Defendant Fould directed Defendant Walter to dismiss the second misconduct. (*Id.*, p. 5.) This allegation lends itself to the Fourteenth Amendment due process claim, which will not survive summary judgment. *See supra*. There is a general accusation that Defendant Fould "actually disregarded the pervasive risk of harm to plaintiff by failing to act." (*Id.*, p. 6.) But, Plaintiff failed to allege any facts in support of this allegation. And, there are no allegations that Defendant Fould was involved in the disclosure that allegedly led to the second stabbing. Therefore, Plaintiff has failed to establish the necessary personal involvement to proceed with a § 1983 claim against Defendant Fould under the Eighth Amendment.

The complaint alleges that Defendant Fowler included "deceits and untruths" in his misconduct report. *Id.* However, this allegation lends itself to a Fourteenth Amendment due process claim, which will not survive summary judgment. *See supra*. As such, Plaintiff has failed to establish the necessary personal involvement to proceed with a § 1983 claim against Defendant Fowler under the Eighth Amendment.

The complaint alleges that Defendant McGinley failed to conduct a full independent investigation on the stabbings. (*Id.*) This allegation lends itself to a Fourteenth Amendment due process claim, but that claim will not survive

summary judgment. *See supra*. The complaint also states that Defendant McGinley "actually disregarded the pervasive risk of harm to plaintiff by failing to act." (*Id*.) However, there are no facts alleged in the complaint to support this statement. Therefore, there are insufficient facts of personal involvement alleged in the complaint to proceed with an Eighth Amendment claim against Defendant McGinley.

Therefore, the court will grant Defendants' motion in regards to the Eighth Amendment claim against Defendants Fould, Fowler, and McGinley.

**D. Defendants' Motion Will Be Granted as to the Eighth Amendment Claim Against Defendant Walter In Her Official Capacity**.

The sole remaining claim is the Eighth Amendment deliberate indifference claim raised against Defendant Walter for her alleged disclosure to the alleged assailants in the first stabbing. Plaintiff raises this claim against Defendant Walter in both her official and individual capacities and seeks only monetary relief. (Doc. 1, p. 7.)

A suit for monetary damages brought against a state official in her official capacity is not a suit against that official; it is a suit against that official's office. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted); *Allen v. New Jersey State Police*, 974 F.3d 497, 506 (3d Cir. 2020). This is no different from a suit against the State itself, which is barred by the Eleventh Amendment. *See Will*, 491 U.S. at 66, 70-71; *Pennhurst State School & Hops. V.*

*Halderman*, 465 U.S. 89, 98-99 (1984) (explaining that the Eleventh Amendment bars suits against a State in federal court).

There are, however, two exceptions to Eleventh Amendment immunity— (1) the State has waived its immunity; or (2) Congress has exercised its power under Section 5 of the Fourteenth Amendment to override that immunity. *See Will*, 491 U.S. at 66; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (recognizing these two exceptions to a State's Eleventh Amendment immunity).

The court finds that neither one of these exceptions apply here. As explained by the Third Circuit, the Commonwealth of "Pennsylvania has not waived its sovereign immunity defense in federal court[,]" and "Congress did not abrogate Eleventh Amendment immunity via § 1983[.]" See *Downey v. Pennsylvania Dep't of Corr*., 968 F.3d 299, 310 (3d Cir. 2020) (citation omitted); *see also* 42 Pa. Stat. and Cons. Stat. Ann. § 8521(b) (stating that "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States"); *Quern v. Jordan*, 440 U.S. 332, 345 (1979) (concluding that the history and language of §1983 establish that Congress did not intend to make the States liable under that statute).

Accordingly, the court concludes that Plaintiff's Eighth Amendment claim for monetary damages against Defendant Walter in her official capacity is barred

by Eleventh Amendment immunity. As such, the court will grant summary judgment against Plaintiff in the Eighth Amendment claim against Defendant Walter in her official capacity.

## CONCLUSION

Based on the foregoing, the court will grant in part and deny in part Defendants' motion for summary judgment. (Doc. 43.) The court will enter judgment in favor of Defendants on the Fourteenth Amendment claim against all Defendants, the Eighth Amendment claim against Defendants McGinley, Fould, and Fowler, and the Eighth Amendment claim against Defendant Walter in her official capacity. The Eighth Amendment claim against Defendant Walter in her individual capacity will survive summary judgment. An appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: March 31, 2023